IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

KARLA K. REINHARDT,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C10-1025

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Reinhardt's Education and Employment Background . . . . . . . . . . 5
     B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 5
          1.   Reinhardt's Testimony . . . . . . . . . . . . . . . . . . . . . . . 5
          2.   Vocational Expert Testimony . . . . . . . . . . . . . . . . . . . . 6
     C.   Reinhardt's Medical History . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 13
     B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 15
          1.   Dr. Jackson's Opinions . . . . . . . . . . . . . . . . . . . . . . 15
          2.   Healy's Opinions . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          3.   Justmann's Opinions . . . . . . . . . . . . . . . . . . . . . . . . 18
          4.   Fully and Fairly Developed Record . . . . . . . . . . . . . . . 20

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Karla K. Reinhardt on October 12, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Reinhardt asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Reinhardt requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On May 16, 2008, Reinhardt applied for both disability insurance benefits and SSI benefits. In her applications, Reinhardt alleged an inability to work since September 16, 2007 due to bipolar disorder, borderline personality disorder, and back problems. Reinhardt's applications were denied on August 18, 2008. On December 10, 2008, her applications were denied on reconsideration. On February 11, 2009, Reinhardt requested an administrative hearing before an Administrative Law Judge ("ALJ"). On June 2, 2009, Reinhardt appeared via video conference with her attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Reinhardt and vocational expert George B. Paprocki testified at the hearing. In a decision dated June 15, 2009, the ALJ denied Reinhardt's claims. The ALJ determined that Reinhardt was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Reinhardt appealed the ALJ's decision. On August 11, 2010, the Appeals Council denied Reinhardt's request for review. Consequently, the ALJ's June 15, 2009 decision was adopted as the Commissioner's final decision.

On October 12, 2010, Reinhardt filed this action for judicial review. The Commissioner filed an Answer on January 19, 2011. On February 18, 2011, Reinhardt filed a brief arguing that there is not substantial evidence in the record to support the ALJ's

finding that she was not disabled and could perform other work that exists in significant numbers in the national economy. On April 7, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 13, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Reinhardt's Education and Employment Background

Reinhardt was born in 1963. She is a high school graduate. Reinhardt testified that she had no special education classes throughout school. She further stated that she is able to read, write, and understand the English language.

The record contains a detailed earnings report for Reinhardt. The report covers Reinhardt's employment history from 1980 to 2009. Between 1980 and 2008, Reinhardt earned between $601.39 (1981) and $23,427.12 (2004). She had no earnings in 2009.

### B. Administrative Hearing Testimony

### 1. Reinhardt's Testimony

At the administrative hearing, the ALJ asked Reinhardt to discuss her reasons for believing she is unable to perform any of her past work. Reinhardt explained that:

> Because of my injury to my hip and back, and my neck. I'm not able to lift anything. I'm not able to stand for more than maybe ten minutes without having to sit down. My restrictions are not to lift, push, or pull anything over 20 pounds, or frequent position changes as far as sitting and standing when needed, limited, you know, like stooping over, carrying things.

(Administrative Record at 47.) Reinhardt also indicated that she has difficulty working with other people. Specifically, she stated that "it's just really hard for me to work with people around me that are telling me what to do all the time."[1] The ALJ also inquired as to Reinhardt's functional capabilities:

> Q:   How long are you able to stand at one time, now?
> A:   Without, like if I go to the grocery store, if I have a cart to lean on, I'm okay to get through the store. But I usually end up having to stop. Usually about ten minutes is the max, and I have to either, I have to sit down.
> Q:   How long are you able to walk at one time?

---

[1] *See* Administrative Record at 48.

| A: | Through a grocery store, you know, however long it takes me to get through it. As far as walking outside, if I walk two blocks, I'm doing good. |
|---|---|
| Q: | What's the heaviest weight that you lift, and/or carry at this time? |
| A: | Probably nothing more than two gallons of milk. |

(Administrative Record at 51-52.)

Reinhardt's attorney also questioned Reinhardt. Reinhardt's attorney inquired whether Reinhardt believed she would be able attend work on a regular basis if she was employed in a full-time job. Reinhardt replied, "[p]robably not. I'd oversleep, because I have a bad sleeping pattern."[2] Specifically, Reinhardt stated that she is only able to sleep for 3 hours or less at one time because of pain and bad dreams. According to Reinhardt, her sleeping problems cause her fatigue and make it difficult for her to function until the afternoon.

Reinhardt's attorney also asked Reinhardt to discuss her issues with pain. Reinhardt testified that she has pain in her right hip and the right-side of her back. She estimated that her pain was a 7 on a scale of 1 to 10 with 10 being the highest level of pain. She described it as a stabbing pain, both in her hip and back. Reinhardt's attorney asked Reinhardt whether there was anything she could do to help her pain. Reinhardt replied that she has to move around, "switching positions, recline, sit on the edge of the couch, stand up, walk back and forth to the room trying to stretch."[3]

## 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert George B. Paprocki with a hypothetical for an individual who:

> can do light work[.] . . . The person can only occasionally climb, balance, stoop, kneel, crouch, and crawl. The person should avoid concentrated exposure to hazards, such as

---

[2] *See* Administrative Record at 57.

[3] *Id.* at 59.

> moving machinery and unguarded heights. The person is able
> to do only simple routine repetitive work requiring only simple
> work-related decisions and few workplace changes. No
> production rate pace work, nothing like a fast-paces [*sic*]
> assembly line, but rather goal-oriented work. No requirement
> to read instructions or write reports, only occasional contact
> with the public, co-workers and supervisors.

(Administrative Record at 79.) The vocational expert testified that under such limitations, Reinhardt could not perform her past relevant work. The vocational expert further testified that Reinhardt could perform the following work: (1) housekeeping cleaner (7,500 positions in Iowa and 430,000 positions in the nation), (2) addresser (800 positions in Iowa and 250,000 positions in the nation), and (3) clothes folder (400 positions in Iowa and 40,000 positions in the nation). The ALJ asked a second hypothetical which was identical to the first hypothetical, except that the individual would be limited to sedentary work and need to alternate from sitting to standing every 30 minutes. The vocational expert testified that under such limitations, Reinhardt could not perform her past relevant work, but could perform the jobs of addresser and surveillance system monitor (350 positions in Iowa and 60,000 positions in the nation).

### C. Reinhardt's Medical History

On March 21, 2007, Reinhardt met with Alana Neuwoehner, LMHC, a mental health counselor at Hillcrest Family Services ("Hillcrest") in Dubuque, Iowa, seeking medication management for her mental health concerns. Reinhardt explained to Neuwoehner that she had been diagnosed with bipolar disorder in the past, and her treating doctor moved out of state, and she wanted to transfer her psychiatric services to Hillcrest.[4] Upon examination, Neuwoehner noted that:

> [Reinhardt] reported that she has experiences [*sic*] frequent
> mood swings 'all the time' and is 'always depressed.' She

---

[4] According to Neuwoehner's "Intake Evaluation," Reinhardt stated "I want 'med management only' and indicated she does not want the 'other crap,' i.e. counseling." *See* Administrative Record at 276.

> indicated that her depression at the present is moderate.
> [Reinhardt] stated that periodically she has had thoughts about
> suicide but denied any current suicidal ideation, intent, or plan
> to harm herself. She denied any psychotic symptoms. She
> indicated she experiences initial and sleep-maintenance
> insomnia and has low energy. . . . She reported at times she
> has experienced manic behaviors; however, she described what
> appeared to be hypomanic behavior. She stated she has a 'bad
> attitude' and indicated she did not think she could change.

(Administrative Record at 274.) Neuwoehner diagnosed Reinhardt with bipolar disorder, moderate depression, and borderline personality disorder. Neuwoehner assessed a GAF score of 54 for Reinhardt. Neuwoehner recommended individual psychotherapy as treatment, but Reinhardt declined.

On March 30, 2007, at Hillcrest, Reinhardt had a follow-up appointment with Sarah Justmann, ARNP, regarding medication management. Justmann diagnosed Reinhardt with major depressive disorder and borderline personality disorder. Justmann assessed Reinhardt with a GAF score of 54. Justmann opined that:

> [Reinhardt] has a very flat angry affect. . . . There is no
> evidence of psychosis, although I question some paranoia; she
> denies this. I would consider her suicide risk to be moderate
> to high due to her poor social skills, social support, mood and
> history. . . . Her attention and focus were normal and she was
> somewhat loud and rude with her comments. I suspect that
> she is depressed, but she would not describe herself as having
> typical depression symptomology.

(Administrative Record at 271-72). Justmann recommended medication and psychotherapy as treatment.[5]

In April 2008, Reinhardt injured her back. The injury was the result of a slip and fall that occurred while she was employed at Dubuque Greyhound Park and Casino. In May, Reinhardt was evaluated by Dr. Howard Kim, M.D., for pain in her middle and

---

[5] Once again, Reinhardt refused psychotherapy as a treatment option. *See* Administrative Record at 271.

upper back. Upon examination, Dr. Kim found that Reinhardt had "some" cervical range of motion restriction, particularly through extension, which affected her ability to carry out "many" of her day-to-day activities. Dr. Kim concluded that:

> Since [Reinhardt's] motivation is in question relative to whether she even wants to attend therapy, it was decided between the 2 of us that an initial bout of home exercises will be attempted and considering the lack of any severe signs of musculoskeletal deficit or lack of neurologic findings, that she could indeed continue with flexibility and stabilization routines at home.

(Administrative Record at 292.) Reinhardt continued to experience back pain in late May, and she began physical therapy and continued home exercises. At that time, she was restricted from lifting, carrying or pushing/pulling over 20 pounds, and limited in bending, stooping, and twisting. She was also instructed to make frequent position changes as needed.

On July 14, 2008, Dr. Everett Nitzke, M.D., reviewed Reinhardt's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Reinhardt. Dr. Nitzke determined that Reinhardt could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Nitzke found no postural, manipulative, visual, communicative, or environmental limitations.

On August 7, 2008, Reinhardt was referred by DDS to Brenna Healy, M.A., for a psychological evaluation. Upon examination, Healy diagnosed Reinhardt with depressive disorder and borderline personality disorder. Healy assessed a GAF score of 48 for Reinhardt. Healy concluded that:

> Reinhardt appears to have little difficulty remembering and understanding instructions, procedures, and locations. She has little mental limitation carrying out instructions, maintaining

attention, concentration, and pace. She has marked impairment in her ability to interact appropriately with supervisors, co-workers, and the public. She also has marked mental limitation in her ability to use good judgment and respond appropriately to changes in the workplace.

(Administrative Record at 311.)

On August 14, 2008, Dr. Philip Laughlin, Ph.D., reviewed Reinhardt's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Reinhardt. On the Psychiatric Review Technique assessment, Dr. Laughlin diagnosed Reinhardt with a history of bipolar disorder, depressive disorder, and borderline personality disorder. Dr. Laughlin determined that Reinhardt had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Laughlin determined that Reinhardt was moderately limited in her ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Dr. Laughlin concluded that:

[Reinhardt] would have difficulty consistently performing any complex cognitive activity that would require extremely high levels of abstract thinking, prolonged attention to minute details, and rapid shifts in alternating attention. She would also have difficulty with jobs that would require her to have rapid and proficient reading and written language skills. [Reinhardt] appears able to sustain sufficient concentration and attention to perform a range of non-complex, repetitive and

routine cognitive activity when she is motivated to do so. [Reinhardt] will have some difficulty being able to sustain short lived, superficial interaction with others. She possesses adequate expressive and receptive language skills.

(Administrative Record at 315.)

On October 8, 2008, Reinhardt met with Dr. Michael D. Jackson, M.D., for an independent medical examination. Reinhardt complained of neck, right hip, and back pain. Reinhardt described her pain to Dr. Jackson as follows:

[Reinhardt] reports that the pain in her back is the worst and she describes it as sharp. By her report, it is aggravated by almost 'everything.' She has not found anything that helps relieve the pain in her back. She describes the hip pain as soreness. The soreness increases with ambulation and is relieved with rest. . . . With respect to her neck pain, it is increased with static positioning and relieved with stretching. She describes it as the least painful of the 3 areas. She experiences an occasional headache which she associates with the neck pain. The headaches occur up to 3 times a week and are relieved with stretching, similar to the neck pain. . . . She denies radicular symptoms such as radiating pain, weakness or numbness and tingling in her arms or legs. . . . In terms of pain, again, she reports it to be 4 out of 10 at its best and typically 9 out of 10 at its worst. During the examination she reports her pain at 8 out of 10. Of note, she is displaying some minor pain behaviors but not consistent with 8 out of 10 pain.

(Administrative Record at 340-41.) Upon examination, Dr. Jackson opined that Reinhardt had not reached maximum medical improvement. Dr. Jackson believed that she was capable of returning to her past work with a sit/stand restriction, as needed. Dr. Jackson further opined that "I anticipate that she will not have any permanent impairment or permanent restrictions once she has completed the work conditioning program."[6]

---

[6] *See* Administrative Record at 345.

Dr. Jackson re-evaluated Reinhardt on March 31, 2009. Upon examination, Dr. Jackson determined that Reinhardt had: (1) a 2% impairment of the whole person due to loss of flexion at the hips; (2) a 2% impairment of the whole person due to loss of extension of her lumbar spine; and (3) a 1% impairment of the whole person due to the loss of right lateral bending. Dr. Jackson concluded that Reinhardt had a 5% total impairment of the whole person based on her impairments.

On May 13, 2009, at the request of Reinhardt's attorney, Justmann filled out a Mental Impairment Questionnaire. Justmann diagnosed Reinhardt with major depressive disorder and bipolar disorder. Justmann assessed a GAF score of 61 for Reinhardt. According to Justmann, Reinhardt's symptoms included: mood swings, depressive thoughts and feelings, anhedonia, anger, irritability, a history of suicidal thoughts, and sleeping problems. Justmann opined that Reinhardt was unable to meet competitive standards in: working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, asking simple questions or requesting assistance, responding appropriately to changes in a routine work setting, dealing with normal work stress, interacting appropriately with the general public, and maintaining socially appropriate behavior. Justmann also opined that Reinhardt had no useful ability to function with regard to accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Justmann explained that Reinhardt "has a very difficult time getting along with others. She is severely distracted by life stressors [and] can't hold a job, . . . [because of] her depression[,] she doesn't care."[7] Justmann concluded that Reinhardt has mild restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

---

[7] *See* Administrative Record at 359.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Reinhardt is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work

experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Reinhardt had not engaged in substantial gainful activity since September 16, 2007. At the second step, the ALJ concluded from the medical evidence that Reinhardt had the following severe combination of impairments: degenerative disc disease of the cervical spine, thoracic spine, and lumbar spine, depression, borderline personality disorder, and obesity. At the third step, the ALJ found that Reinhardt did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Reinhardt's RFC as follows:

> [Reinhardt] has the residual functional capacity to perform light work . . . except that she should only occasionally climb, balance, stoop, kneel, crouch, or crawl. Further [Reinhardt] should avoid concentrated exposure to hazards, such as moving machinery and unguarded heights. In addition, [Reinhardt] can only do simple routine, repetitive work which involves only simple work related decisions and few workplace changes. That [Reinhardt] cannot perform any production rate work, nothing like fast-pace assembly line work, but rather goal-oriented work. There should be no requirements to read instructions or write reports. Lastly, [Reinhardt] should have only occasional contact with the public, co-workers, or supervisors.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined that Reinhardt could not perform any of her past relevant work. At the fifth step, the ALJ determined

14

that based on her age, education, previous work experience, and RFC, Reinhardt could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Reinhardt was not disabled.

## B. Objections Raised By Claimant

Reinhardt argues that the ALJ erred in four respects. First, Reinhardt argues that the ALJ failed to properly evaluate the opinions of Dr. Jackson, an examining physician. Second, Reinhardt argues that the ALJ failed to properly consider the opinions of Brenna Healy, an examining psychologist. Third, Reinhardt argues that the ALJ failed to properly address the opinions of Sarah Justmann, a mental health treating source. Lastly, Reinhardt argues that the ALJ failed to fully and fairly develop the record with regard to her work-related mental limitations, and the effect of her obesity on her functional limitations.

### 1. Dr. Jackson's Opinions

Reinhardt argues that the ALJ failed to properly consider the opinions of Dr. Jackson, an examining physician. Reinhardt maintains that the ALJ's discussion of Dr. Jackson's opinions are not supported by substantial evidence on the record. Reinhardt concludes that this matter should be reversed and remanded for further consideration of Dr. Jackson's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In her decision, the ALJ addressed Dr. Jackson's opinions and determined that:

> [A]n independent medical examination report from Michael D. Jackson, M.D., indicated that he found [Reinhardt] to have a 5% whole person impairment (hip and lumbar impairments combined). In addition, Dr. Jackson believes [Reinhardt] could return to work with a sit/stand option; however, the sit/stand option would be rendered unnecessary upon the completion of a work conditioning program. Considering the relatively minimal objective physical findings and the lack of limitations opined by treating and examining physicians, the undersigned finds that the preponderance of evidence supports that [Reinhardt] could sustain light work within the limitations outlined in the residual functional capacity[.]

(Administrative Record at 20.) More generally, the ALJ also determined that:

> The undersigned gives significant weight to the contemporaneous, longitudinal medical treatment records. As for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that [Reinhardt] is disabled or even has permanent limitations greater than those determined in this decision. Their respective opinions are internally consistent as well as consistent with the evidence as a whole. As there is no objective evidence contradicting the findings, the opinions are entitled to great weight.

(Administrative Record at 22.) Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Jackson. *See* 20 C.F.R. § 404.1527(d). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. *Healy's Opinions*

Similar to the opinions of Dr. Jackson, Reinhardt argues that the ALJ failed to properly consider the opinions of Healy, an examining psychologist. Reinhardt maintains that the ALJ's discussion of Healy's opinions are not supported by substantial evidence on

the record.  Reinhardt concludes that this matter should be reversed and remanded for further consideration of Healy's opinions.

Again, the Court notes that an ALJ is required to evaluate every medical opinion he or she receives from a claimant.  20 C.F.R. § 404.1527(d).  If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)).  "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.  The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In her decision, the ALJ addressed Healy's opinions and determined that:

> [Reinhardt] met with Brenna Healy . . . for a psychological evaluation, and was diagnosed with depressive disorder [] and borderline personality disorder.  Ms. Healy rated [Reinhardt] with a Global Assessment of Functioning (GAF) score of 48. . . .  A rating of 48 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  Correspondingly, Ms. Healy opined that [Reinhardt] would have little difficulty remembering and understanding instructions, procedures, and locations, but that she does have some limitation with respect to carrying out instructions, maintaining attention, concentration, and pace.  In addition, Ms. Healy opined that [Reinhardt] is expected to have difficulty in the ability to interact appropriately with supervisors, co-workers, and the public.  Similarly, she may show great limitation in her ability to use good judgment and respond appropriately to changes in the workplace. . . .  [Reinhardt] appears able to sustain sufficient concentration and attention to perform a range of non-complex, repetitive and routine cognitive activity when she is motivated to do so and

she possesses adequate expressive and receptive language skills.

(Administrative Record at 20-21.) Furthermore, the Court, again, bears in mind that the ALJ generally determined that:

> The undersigned gives significant weight to the contemporaneous, longitudinal medical treatment records. As for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that [Reinhardt] is disabled or even has permanent limitations greater than those determined in this decision. Their respective opinions are internally consistent as well as consistent with the evidence as a whole. As there is no objective evidence contradicting the findings, the opinions are entitled to great weight.

(Administrative Record at 22.) Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Healy. *See* 20 C.F.R. § 404.1527(d). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Justmann's Opinions*

Justmann, as a nurse practitioner, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Justmann is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the

18

degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In addressing Justmann's opinions, the ALJ determined that:

> [A]s for the opinions of Sarah Justmann, ARNP, and Alana Neuwoehner, LMHC, who are not 'acceptable medical sources' under social security regulations, the undersigned notes they are 'other sources' who cannot establish the existence of a medically determinable impairment, or give a medical opinion. The undersigned has considered their opinions as to the severity of [Reinhardt's] impairments and how they affect her ability to function, in accordance with SSR 06-03p, but finds said opinions are not supported by their own treating notes which note [Reinhardt] is generally euthymic at her medical management sessions with a GAF of 51-60, moderate symptoms.

(Administrative Record at 22.) Having reviewed the entire record, the Court finds that the ALJ properly considered Justmann's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for finding Justmann's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010. Accordingly,

even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 4. Fully and Fairly Developed Record

Reinhardt argues that the ALJ failed to fully and fairly develop the record. Specifically, Reinhardt argues that because the ALJ discounted the opinions of Dr. Jackson, Healy, and Justmann, the ALJ should have requested consultative physical and psychological examinations. Reinhardt also argues that the ALJ failed to properly consider "the functional limitations of [her] obesity in combination with her other impairments."[8] Reinhardt maintains that this matter should be remanded to further development of the record.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating

---

[8] *See* Reinhardt's Brief (docket number 10) at 14.

physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Finally, Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

Here, the ALJ fully considered the opinions of examining and treating sources, Dr. Jackson, Healy, and Justmann, including their determinations on Reinhardt's work-

related limitations and impairments.[9] The ALJ also considered the opinions of other treating sources and the opinions of two consultative doctors who provided DDS with physical and mental RFC determinations.[10] Therefore, having thoroughly reviewed the entire record, the Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Therefore, the ALJ did not err by not ordering any further consultative examinations for Reinhardt. *See Goff*, 421 F.3d at 791 (an ALJ should contact a treating physician for further information when "the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'") (quotation omitted); *Stormo*, 377 F.3d at 806 (an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped"); *Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

As to the issue of obesity, the ALJ's decision provides that:

> The undersigned has given consideration to Social Security Ruling 02-1p which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual

---

[9] *See* Administrative Record at 20-22.

[10] *Id.*

> functional capacity assessment in addition to any limitations
> resulting from any other physical or mental impairments
> identified. There are medical records in the file indicating
> [Reinhardt's] obesity impacts her other impairments;
> Dr. Meester noted that [Reinhardt's] lack of conditioning and
> obesity has likely set her up for being repetitively injured.

(Administrative Record at 19.) Here, the ALJ explicitly stated that she considered Reinhardt's obesity in making her disability determination. While it is arguable that the ALJ could have better articulated her consideration of the effect of Reinhardt's obesity on her functional limitations, the Court believes that the ALJ fully considered Reinhardt's obesity in making her RFC and disability determinations in accordance with SSR 02-1p. In drawing this conclusion, the Court bears in mind that while an ALJ is required to fully and fairly develop the record, he or she "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.* Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to the issue of Reinhardt's obesity. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Jackson, Healy, and Justmann. The Court also finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case. Lastly, the Court finds that the ALJ properly considered Reinhardt's obesity in making her RFC and disability determinations. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.      The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.      Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.      The Clerk of Court is directed to enter judgment accordingly.

DATED this ___2nd___ day of August, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA